**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| YANG ZEJU,<br>Petitioner,<br>v.<br>JAMES JANECKA, et al.,<br>Respondents. | Case No. EDCV 26-6579-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On November 4, 2026, Yang Zeju (A# 242-525-912) ("Petitioner"), an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, who is represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") seeking release on the grounds that her detention since October 5, 2026, violates her rights under the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act ("INA") and implementing regulations. (Dkt. No. 1). The Petition was accompanied by an Ex Parte Application for

Temporary Restraining Order ("TRO"), which similarly seeks release from custody, among other relief. (Dkt. No. 2). Attached to the TRO Application is a declaration of counsel ("Yang Decl.") and exhibits. (Dkt. No. 2-1). On November 12, 2026, Respondents filed a Response to the Petition, arguing that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing, but not immediate release. (Dkt. No. 9). Petitioner filed a Reply on November 13. 2026, which includes a declaration of counsel with additional exhibits. (Dkt. No. 10).

For the reasons stated below, the Petition is GRANTED to the extent that Respondents are enjoined from continuing to detain Petitioner unless she is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations.[1]

**BACKGROUND**

Petitioner is a citizen of the People's Republic of China who was issued a "B1/B2 nonimmigrant visa (multiple entries)" on March 25, 2025, that is valid through March 19, 2035. (Petition ¶ 17). She first traveled to the United States on October 9, 2025. (Petition ¶ 17). After then returning to China, she re-entered the United States through the Los Angeles International Airport on

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3-5, 8).

February 9, 2026, with authorization to remain until August 8, 2026. (Petition ¶ 17; Yang Decl. Ex. 2).

Petitioner remained in the United States after her authorized period of stay expired allegedly because she fears return to China. (Petition ¶ 19). She filed an asylum application with U.S. Citizenship and Immigration Services ("USCIS") on September 4, 2026. (Petition ¶ 20; Yang Decl. Ex. 3). On September 16, 2026, USCIS issued a Notice of Action confirming that the application "was received and is pending." (Petition ¶ 20; Yang Decl. Ex. 3-A). On September 19, USCIS issued Petitioner a notice directing her to appear for a biometrics appointment on October 5, 2026. (Petition ¶ 22; Yang Decl. Ex. 4).

When Petitioner appeared for her appointment at the USCIS office on October 5, ICE officers took her into custody without any arrest warrant. (Petition ¶ 24). She was served later that day with a Notice to Appear charging her with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). (Petition ¶ 26; Yang Decl. Ex. 5). She was transported to the Adelanto ICE Processing Center, where she remains at this time. (Petition ¶ 28). Petitioner has no criminal history. (Petition ¶ 18).

**DISCUSSION**

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed

from the United States." 8 U.S.C. § 1226(a); see Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) (holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process."). Detention under § 1226(a) is "discretionary" and "provides for release on bond or conditional parole." Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Accordingly, Petitioner merits an order requiring the government to provide her a prompt bond hearing before an immigration judge pursuant to § 1226(a) and all applicable regulations.

To the extent that Petitioner instead seeks immediate release, the present record does not support such relief here. It is true that ordering a post-deprivation bond hearing does not always suffice for immigration detainees subject to § 1226(a). In particular, as district courts in this Circuit have concluded, noncitizens who are re-detained after previously being released on an order of supervision have a right, under the Due Process Clause, to pre-detention notice and a hearing, and a post-deprivation bond hearing is not an adequate remedy for the failure to provide those pre-deprivation procedures; in such cases, therefore, the petitioners are typically granted immediate release from custody. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *4-6 (C.D. Cal.

Feb. 3, 2026); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1166 (C.D. Cal. 2025). Similarly, "[j]udges throughout the Ninth Circuit have repeatedly held . . . 'that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds — pursuant to the Government's affirmative decision not to detain him — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process." Ruiz Tellez v. United States Gen. Att'y, 2026 WL 2654571, at *2 (E.D. Cal. Sept. 9, 2026) (quoting Norberto C.M. v. Warden, Central Valley Annex, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026)); see also Cao v. Johnson, 2026 WL 2751379, at *1 (C.D. Cal. Sept. 16, 2026) ("'[F]or constitutional purposes, there should be no material difference between an alien released from detention by immigration authorities and an alien whom immigration authorities previously chose not to detain.' The Court finds persuasive a decision . . . which found the distinction 'specious' for constitutional purposes." (citing Kharitonova v. Albarran, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026))); Zhou v. Janec[k]a, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Abdeltawab v. Armant, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) ("Th[e] principle [that a noncitizen has a protected liberty interest in remaining out of custody] extends to those like Petitioner who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents."); Chaparro Ayala v. Albarran, 2026 WL 2722780, at *3 (N.D. Cal. Sept. 15, 2026) ("When the government makes 'a decision

not to detain [someone] in the first place,' that decision can create 'the same liberty interest in [that person's] continued freedom as an individual initially detained.'" (quoting Kharitonova, 2026 WL 531441, at *2)).

But this is not such a case, as Petitioner was never previously subject to the government's affirmative decision not to detain her, at least since her visa expired and she lost her legal status. Petitioner fails to demonstrate that she had a due process right to a pre-detention hearing, or that she otherwise has any due process right to immediate release from detention.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause

requires Respondents to provide her "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process he is due, the Court considers the following three factors from Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, Petitioner's private liberty interest is limited. Although she entered the United States legally on a nonimmigrant visa, that status lasted only about six months and expired on August 8, 2026, after which she was not determined to merit being out of custody. On September 4, about a month before she was detained, Petitioner applied for asylum with USCIS, and USCIS issued her a notice acknowledging receipt of the application. However, that notice expressly advised her that "[h]aving a pending asylum application with USCIS does not preclude the Department of Homeland Security (DHS) from placing [Petitioner] into removal

proceedings." (Yang Decl. Ex. 3-A). The government generally has the authority to arrest and detain noncitizens in removal proceedings, under 8 U.S.C. § 1226(a). As Petitioner had resided in the United States for only a short period, with no assurance that she could continue to do so and remain at liberty, her protected liberty interest was tenuous.

Second, because Petitioner had not previously undergone an assessment of her status or a determination as to whether her release would pose a danger to the community or a flight risk, providing her with a post-detention hearing, rather than a pre-detention hearing (or immediate release), would pose only a low or moderate risk of erroneous deprivation of liberty. See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209–10 (9th Cir. 2022) (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings). In this respect Petitioner's situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July

14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). That interest is naturally greater for noncitizens who present a flight risk while removal proceedings are pending against them. But where Petitioner had not been assessed for flight risk or danger, the government's interest in detaining her at least initially was significant. Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner was not entitled to a pre-detention hearing, and her due process rights are adequately addressed by a post-deprivation bond hearing pursuant to § 1226(a). See, e.g., Quinonez Herrera v. Mullin, 2026 WL 915184, at *3 (C.D. Cal. Apr. 3, 2026) (petitioner who was not on supervised release when detained failed to demonstrate that due process entitled her to release rather than a bond hearing under § 1226(a)); Okoth v. Kaiser, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7,

2026) (rejecting petitioner's claim that he was entitled to a pre-detention hearing where, unlike in cases involving noncitizens who were re-detained while on supervised release during the pendency of removal proceedings, petitioner had not been previously detained and released on bond).

Additionally, Petitioner does not merit release based on her claim that her warrantless arrest violated the INA and applicable regulations. (See Petition at 11-12, 16; Reply at 7-9). The remedy for unlawful arrest generally is the suppression of evidence obtained therefrom, not release from custody. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040-41 (1984); United States v. Garcia-Beltran, 443 F.3d 1126, 1131-32 (9th Cir. 2006); see also Martinez-Medina v. Holder, 673 F.3d 1029, 1033-34 (9th Cir. 2011) (exclusionary rule applies in civil removal proceedings only when the Fourth Amendment violation is egregious). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." Lopez-Mendoza, 468 U.S. at 1039; see also Stone v. Powell, 428 U.S. 465, 485 (1976) (noting that "judicial proceedings need not abate when the defendant's person is unconstitutionally seized" (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975); Frisbie v. Collins, 342 U.S. 519 (1952))); Garcia-Beltran, 443 F.3d at 1132 ("[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's

identity." (quotation omitted)).[2] Petitioner's unlawful-arrest claim therefore does not entitle her to release from custody. See, e.g., Hernandez v. Facility Administrator, 2026 WL 2525600, at *2–3 (C.D. Cal. Aug. 26, 2026) (although it appeared that immigration detainee's arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), he was not entitled to habeas relief on the claim because "[t]he remedy for an unlawful arrest is typically not the dismissal of a proceeding and not release by way of habeas corpus petition" (citing Lopez-Mendoza, 468 U.S. at 1043; Streeter v. Craven, 418 F.2d 273, 274 (9th Cir. 1969) (per curiam))); Suraj v. Bondi, 2026 WL 507682, at *2 (W.D. Wash. Feb. 24, 2026) ("Suraj's account of his arrest . . . suggests that the ICE agents involved in his apprehension lacked probable cause to detain him and may have violated the law. However, even if his arrest was unlawful, it would not provide a basis for release from custody." (citation omitted)).

**ORDER**

Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Petition (Dkt. No. 1) as follows: (1) the Court GRANTS the Petition

---

[2] "Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. 'A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.'" U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citations omitted).

to the extent that Respondents are enjoined from continuing to detain Petitioner Yang Zeju (A# 242-525-912) unless within seven (7) days she is provided a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations; and (2) otherwise, the Court DENIES the Petition. Respondents are further ORDERED to file a status report within eight (8) days advising the Court as to whether Petitioner has received a bond hearing, the outcome of the bond hearing, and Respondents' compliance with the Court's Order. Petitioner's TRO Application (Dkt. No. 2) is DENIED as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 16, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE